## UNION SWITCH & SIGNAL CO. v. DAY.

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 209.

**1. Patents ⊝183—Inventor abandoning application for patent after assignment, while acting as assignee's agent in prosecuting application, cannot thereafter secure patent in own name.**

Where inventor, contracting for sale of future inventions, with provision for revesting of title in case of abandonment by assignee, abandoned application for patent while acting as assignee's paid servant in prosecuting application, he may not subsequently secure patent thereon in his own name.

**2. Fraud ⊝41—Bill for fraud rests on actionable wrongdoing.**

Statement that bill or declaration is for fraud, or sounds in fraud, means that it rests on actionable wrongdoing.

**3. Patents ⊝183—Inventor has burden of proving intentional abandonment by assignee of patent under assignment with revesting clause.**

Inventor assigning future patents, with revesting provision in case of abandonment by assignee, has burden of showing intentional abandonment.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Union Switch & Signal Company against Albert V. T. Day. Decree for plaintiff, and defendant appeals. Affirmed.

Plaintiff is the successor in interest and title of certain other corporations, which had dealings with defendant, and for purposes of decision we may speak as though the defendant had dealt with plaintiff itself. Day is an inventor, and, although not a member of the bar, is and was at the times of importance a qualified patent solicitor; i. e., authorized to prosecute applications for patents before the Commissioner.

In 1907 Day made a written contract with plaintiff, by which he "assigned, conveyed, and set over" to plaintiff "the entire right, title, and interest in and to all inventions * * * in the railway signal and traffic-controlling art which he may invent in said art during the three years following." On October 31, 1908, he filed an application for

patent (serial 460,426) setting forth that one of the objects of his invention was to produce "electric translating devices * * * in * * * traffic-controlling devices * * * which shall be responsive to currents of comparatively faint character, and to this end I use in connection with such translating devices means which are hereinafter more particularly described for *amplifying* such currents in order to render their actions certain."

On December 12, 1913, Day, upon due consideration, executed and delivered an assignment to plaintiff in which he described himself as the inventor of an improvement in railway signaling, for which he had filed application No. 460,426, and other enumerated inventions, and then in and by said assignment he "sold, assigned, and transferred and by these presents do sell, assign, and transfer unto the [plaintiff] the whole right, title, and interest in and to the said inventions as fully set forth and described in the specifications of the respective applications above named, and in and to any and all letters patent * * * which may be granted for the said inventions. * * *"

Day had his office with a well-known patent counsel, who had charge of the pending patent applications of plaintiff's predecessor, including 460,426, and we are satisfied that Day did the actual solicitor's work, at least in respect of his own inventions, and particularly including the application, mentioned by number, which for the purposes of this suit may be called the amplifier invention. For this solicitor work he was paid by the counsel with whom he maintained his office.

The solicitation of application 460,426 encountered many difficulties; a good many claims were rejected, and it seems fair to say that whatever patent would come out of the Office thereunder would be regarded by its progenitors as distinctly mangled. The plaintiff's predecessor was not prosperous; we think it had given orders to its counsel to spend as little money as possible, and in September, 1915, the prospect of getting what was desired out of application 460,426 without expensive appeals was not bright. On the 22d of that month it became, under Office practice, necessary to take some forward step with this application. Nothing was done, and by this inaction the application was abandoned.

Without going into the details, we are satisfied that the fact of abandonment was cotemporaneously known to Day and his employer. Whether plaintiff's predecessor knew of it cotemporaneously we are not sure of, but consider the point immaterial; but all those who did know were not conscious of doing the owner of the application any harm. Amplification of current in train control was not a matter then receiving, or seeming to require, much consideration.

Within a year thereafter, however, Day began to think seriously on this problem. It is shown by his own evidence that he thought that plaintiff's predecessor had by assignments from him control of his inventions for the broad use of amplifying devices in train control systems. Nevertheless, on October 18, 1916, Day filed an application in his own name and for his own benefit (126,-240), which, as is now admitted, seeks patent protection for some of the same matters—i. e., amplification of currents used in train control—as are set forth in the application abandoned in 1915.

For reasons not easy to ascertain, and in our judgment immaterial, years passed before Day probably, and plaintiff certainly, discovered the abandonment of application 460,426 in 1915. Thereupon plaintiff brought this bill, which avers that Day "secretly and surreptitiously, and with the wrongful purpose of depriving the plaintiff of said invention, with resulting benefit to himself, wrongfully brought about the said abandonment" of the application in question.

The bill then charges the filing of the present application, 126,240, by Day, "was effectuated secretly and surreptitiously by the defendant in fraud of plaintiff's rights and with the purpose of obtaining for the sole benefit of himself a patent for the invention which he had theretofore assigned to plaintiff."

The prayer of the bill is that it be adjudged that, as against Day, the plaintiff is "the sole and exclusive owner of the said invention and of all rights to obtain letters patent that may issue therefor," and that Day be compelled "to completely and fully perform the covenants and conditions of the said assignment" of December 12, 1913.

After trial the court decreed substantially according to the prayer of the bill, but with leave to Day within a time limited to file an application for his own benefit for "any distinct and severable part of the invention disclosed in" 126,240, and not also disclosed in 460,426.

Thereupon defendant took this appeal.

William S. Pritchard, of New York City, for appellant.

Richard Eyre, Ralph L. Scott, and George E. Cruse, all of New York City, for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The legal difficulties pressed upon us in this cause vanish, we think, when the relation of the parties is noted, the meaning of the contracts between them (of 1907 and 1913) declared, and the sequence of relevant occurrences established. When application 460,426 was abandoned in 1915, defendant was in a fiduciary relation to plaintiff, because he was the paid servant of plaintiff's attorney, his act was that attorney's act, and the extremity of confidence reposed by client on counsel is too well known to need emphasis.

The contract of 1907 was not only for the acquisition by plaintiff of the future fruit of defendant's brain, but was of employment on a stated monthly stipend for a period that overpassed the date of filing the above application for patent. The covenant of the contract was to convey to plaintiff, not merely applications for patents, or the patents themselves, but "any and all *inventions*" relating to the described art, which defendant might devise within the agreed period. The contract of 1913 is a definite conveyance (inter alia) of the *invention* disclosed by application 460,426, and a compliance with the covenants of the agreement of 1907.

This earlier contract contains the proviso that "the subject-matter of all abandoned applications for letters patent of the United States shall become the property of the inventor [this defendant] immediately upon their abandonment."

[1] The material events are these: In 1915 the person in active and actual charge of the prosecution of application 460,426 was this defendant, and the abandonment thereof was his act. We believe that he did not at the time consider the abandoned matter of any importance, and think the best evidence of that fact is that he forgot what he *had* done, and for some time thought that plaintiff controlled his embodiment of the broad idea of amplification in the train control art.

On these facts, defendant insists that, since the application was undoubtedly abandoned, the subject-matter became his under the terms of the 1907 contract, to which that of 1913 was but a supplement, not a substitute; wherefore he is entitled to keep and use that matter, unless his acquisition was the result of his own fraud. But fraud is never presumed, must be proven, and is not proven by this record. At most negligence is shown, and negligence furnishes no ground for relief on a bill of which the gist or gravamen is fraud, and that is the basis of this bill.

[2] To these contentions we cannot agree. To say that a bill or declaration is *for* fraud, or sounds in fraud, means that it rests on actionable wrongdoing; i. e., without the dolus no cause of action is stated. This bill asserts title to the *invention* in question under the contract of 1913, and, unless by new matter that claim is rebutted, it is good.

The effort at rebuttal rests first on abandonment by oversight only, which, however, is alone insufficient, for abandonment of application would not per se divest title to invention. Accordingly the revesting clause of the 1907 agreement is used to supplement the argument; but this involves defendant's agreeing that he was negligent, and then trying to profit by his own negligent act, and this he cannot do, because this endeavor on his part *is* a fraud—not a fraud charged by plaintiff, but arising from defendant's act in making such a defense.

[3] The true meaning of the revesting agreement is, we think, plain, viz.: That applications which plaintiff decided to abandon, and gave orders to abandon, went back to defendant. Since the bill rested on title to the invention, however, the burden of showing an intentional abandonment by plaintiff was on defendant, and, as first above indicated, defendant has utterly failed to bear that burden.

So, reduced to its lowest terms, and the terms most favorable to defendant, this case shows a servant, owing uberrimam fidem to his master's client, seeking to profit by his own negligence in throwing away what he then thought a pebble, but subsequently found to be a diamond. He cannot keep the diamond.

Decree affirmed, with costs.